**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 45093**

| | |
|---|---|
| T3 ENTERPRISES, INC., an Idaho corporation, ) | |
| ) | |
| Plaintiff-Respondent, ) | |
| ) | |
| and ) | |
| ) | |
| THURSTON ENTERPRISES, INC., an ) Idaho corporation, ) | |
| ) | **Boise, November 2018 Term** |
| Plaintiff, ) | |
| v. ) | |
| ) | **Opinion Filed: February 21, 2019** |
| SAFEGUARD BUSINESS SYSTEMS, ) INC., a Delaware corporation, ) | |
| ) | **Karel A. Lehrman, Clerk** |
| Defendant-Appellant, ) | |
| ) | |
| and ) | |
| ) | |
| SAFEGUARD ACQUISITIONS, INC., et ) al., ) | |
| Defendants. ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven Hippler, District Judge.

District court order denying motion to vacate and modify, _affirmed._

Hawley Troxell Ennis & Hawley LLP, Boise, and Weil, Gotschal & Manges LLP, Dallas, TX, for appellant. Paul R. Genender argued.

Givens Pursley LLP, Boise and Mulcahy LLP, Irvine, CA, for respondent. James M. Mulcahy argued.

_____

BURDICK, Chief Justice.

This action arises out of Ada County and involves a distributorship agreement (the Distributor Agreement) between Appellant Safeguard Business Systems (SBS) and Respondent T3 Enterprises (T3). In 2006, T3 entered into the Distributor Agreement with SBS. In 2014, T3

1

filed suit alleging SBS had breached the Distributor Agreement by failing to prevent other SBS distributors from selling to T3's customers and for paying commissions to the interfering distributors rather than to T3. The Distributor Agreement between SBS and T3 contained an arbitration clause indicating disputes must be resolved in a Dallas, Texas based arbitration procedure. The Distributor Agreement also contained a forum selection clause indicating that the Federal Arbitration Act (FAA) and Texas law would apply to any disputes between the parties. Pursuant to this agreement, SBS moved the district court to compel arbitration in Dallas. The district court determined the parties must submit to arbitration, but that the Dallas forum selection clause was unenforceable, and arbitration was to take place in Idaho. The Arbitration Panel (the Panel) found for T3 and the district court confirmed the award in the amount of $4,362,041.95. The district court denied SBS's motion to vacate or modify the award. SBS timely appealed, and we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

SBS is engaged in the distribution of Safeguard brand products (e.g., checks, envelopes, and business forms) and services (e.g., W-2 processing and drop shipping) through a nationwide network of distributors. In 2006, after working eleven years for Roger Thurston, another SBS distributor, Dawn Teply formed T3 and started her own distributorship with SBS. T3 purchased the exclusive rights to commissions on all sales made to 2,000 of Thurston's customers. The purchase was approved by SBS which transferred the "Protected Customers" to T3. Around this same time, on July 28, 2006, T3 entered into the Distributor Agreement with SBS. Pursuant to the agreement, T3 obtained the rights, services, and SBS support that is given to SBS distributors. This included customer protection contractual rights and SBS's enforcement of commission protection and commission rotation. This meant T3 was entitled to all commissions sold to its Protected Customers.

In 2013, Safeguard Acquisitions (a holding company) was funded by SBS's parent company, Deluxe, to acquire independent non-SBS distributor businesses that operated in the same market as SBS. Following the acquisitions, SBS operated the acquired businesses until a qualified buyer could be found to purchase the commission rights on those accounts. Two of the businesses SBS acquired were Form Systems, Inc., (DocuSource) and Idaho Business Forms (IBF). Both DocuSource and IBF were direct competitors of T3 in the same geographic market

2

in Idaho and selling a line of products that directly competed with T3's sale of Safeguard products. Thus, T3 had a high volume of cross-over clients with DocuSource and IBF.

In 2015, SBS entered into a Distributor Agreement with KMMR, (a staffing company to IBF), giving it customer protection rights for the same Protected Customers it had given T3 years earlier. This resulted in customer confusion as to whom they were supposed to order from and pay. SBS's general counsel, Michael Dunlap, was tasked with managing the conflict resulting from the overlap in Protected Customers. In this role, Dunlap sent several email communications to various parties. In 2013 and 2014, Teply attempted, unsuccessfully, to get information from Mr. Dunlap and SBS for T3 about the cross-over accounts.

In August 2014, T3 filed suit in Idaho alleging SBS breached its Distributor Agreement by failing to prevent other SBS distributors from selling to T3's customers and for paying commissions to the interfering distributors rather than to T3. The Distributor Agreement contained an arbitration clause stating that:

> EXCEPT AS OTHERWISE PROVIDED IN SUBPARAGRAPH (A) [(ADDRESSING SBS'S INTERNAL DISPUTE RESOLUTION PROCEDURES)], ALL CONTROVERSIES, DISPUTES OR CLAIMS ARISING BETWEEN US . . . AND YOU . . . ARISING OUT OF OR RELATED TO: (1) THIS AGREEMENT OR ANY PROVISION THEREOF OR ANY RELATED AGREEMENT; (2) THE RELATIONSHIP OF THE PARTIES HERETO; (3) THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENT, OR ANY PROVISION THEREOF; OR (4) ANY SPECIFICATION, STANDARD OR OPERATING PROCEDURE RELATING TO THE ESTABLISHMENT OR OPERATION OF THE SAFEGUARD BUSINESS SHALL BE SUBMITTED FOR ARBITRATION TO BE ADMINISTERED BY THE DALLAS, TEXAS OFFICE OF THE AMERICAN ARBITRATION ASSOCIATION ON DEMAND OF EITHER PARTY. SUCH ARBITRATION PROCEEDINGS SHALL BE CONDUCTED IN DALLAS, TEXAS AND, EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, SHALL BE CONDUCTED IN ACCORDANCE WITH THE THEN CURRENT COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION . . . .

The Distributor Agreement also contained a forum selection clause that stated:

> This Agreement shall become effective when executed and accepted by us in Texas. All matters relating to arbitration will be governed by the Federal Arbitration Act . . . . Except to the extent governed by the Federal Arbitration Act, . . . or other federal law, this Agreement, the distributorship and the relationship between you and Safeguard will be governed and construed under and in accordance with the laws of Texas, except that the provisions of the Texas Deceptive Trade Practices Act (and the regulations thereunder) will not apply

unless its jurisdictional requirements are met independently without reference to this subsection.[1]

SBS moved to compel arbitration of T3's claims against it in Dallas, Texas. SBS also moved to stay proceedings pending the outcome of the arbitration proceeding. T3 initially conceded it was bound to arbitrate but sought to sever the forum provision from the arbitration clause. Later, T3 contended the invalid forum selection provision rendered the entire arbitration clause void. The district court determined that it had jurisdiction to consider the validity of the forum selection clause, that Texas law was applicable, and that under Texas law the forum selection clause was unenforceable. Thus, the court ordered the parties to arbitrate in Idaho and denied SBS's motion to stay proceedings. The district court also granted T3's motion to compel the Dunlap emails and ordered SBS to produce the documents. The Panel found for T3, and in a supplemental award, awarded T3 over $4.3 million in damages which included attorney fees. The district court confirmed the award and denied SBS's motion to vacate or modify the award. SBS timely appealed.

## II. ISSUES ON APPEAL

1. Whether the district court had jurisdiction to consider T3's challenge to forum.

2. Whether the district court erred in ordering the parties to arbitrate in Idaho as opposed to Dallas.

3. Whether the district court abused its discretion in overruling SBS's claims of attorney-client privilege.

4. Whether the district court erred in denying SBS's motion to vacate based on the arbitration panel exceeding its powers under the FAA.

5. Whether T3 is entitled to attorney fees and costs on appeal.

## III. STANDARD OF REVIEW

"When ruling on a motion to compel arbitration, the district court applies the same standard as if ruling on a motion for summary judgment." *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 317, 246 P.3d 961, 970 (2010). As a result, "[a]rbitrability is a question of law to be decided by the court." *Id.* at 315, 246 P.3d at 968 (quoting *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 200, 177 P.3d 944, 947 (2007)). This Court "exercise[s] free review over questions of arbitrability and may draw [its] own conclusions from the evidence presented." *Id*. "Whether the district court had subject matter jurisdiction is a

---

[1] Later, at an arbitration evidentiary hearing, SBS conceded this attempted waiver of the Texas Deceptive Trade Practices Act (DTPA) was ineffective and unenforceable.

question of law over which this Court exercises free review." *H.F.L.P., LLC v. City of Twin Falls*, 157 Idaho 672, 678, 339 P.3d 557, 563 (2014).

"Trial courts have broad discretion over the admission of evidence at trial, including . . . determining whether or not to grant a motion to compel." *Kirk v. Ford Motor Co.*, 141 Idaho 697, 700, 116 P.3d 27, 30 (2005). "Such decisions will only be reversed when there has been a clear abuse of discretion." *Id.* at 701, 116 P.3d at 31. When this Court reviews whether a trial court has abused its discretion, the four-part inquiry is "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

"The scope of review for awards made pursuant to the [FAA] . . . parallels the review of arbitrations governed by Idaho's Uniform Arbitration Act[.]" *Barbee v. WMA Sec., Inc.*, 143 Idaho 391, 396 n.4, 146 P.3d 657, 662 n.4 (2006); *see also Hecla Min. Co. v. Bunker Hill Co.*, 101 Idaho 557, 561 n.3, 617 P.2d 861, 865 n.3 (1980) ("We note that our view of the proper scope of judicial review of commercial arbitrator's awards does not vary significantly depending upon which act applies."). "When reviewing a district court's decision to vacate or modify an award of an arbitration panel this Court employs virtually the same standard of review as that of the district court when ruling on the petition." *Moore v. Omnicare, Inc.*, 141 Idaho 809, 814, 118 P.3d 141, 146 (2005). "Judicial review of arbitrators' decisions is 'limited to an examination of the award to discern if any of the grounds for relief stated in the [FAA] exist.'" *Barbee*, 143 Idaho at 396, 146 P.3d at 662 (quoting *Bingham Cnty. Comm'n v. Interstate Elec. Co.*, 105 Idaho 36, 42, 665 P.2d 1046, 1052 (1983)). Pursuant to the FAA, when a party moves to confirm an arbitration award, a "court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. This includes, among other things, "when arbitrators exceeded their powers . . . ." 9 U.S.C. § 10(a)(4).

## IV.    ANALYSIS

### A.    The district court had jurisdiction to consider the enforceability of the forum selection clause.

SBS moved to compel arbitration of T3's claims against it in Dallas, Texas. T3 challenged the forum selection clause arguing it was unconscionable and unenforceable under Idaho Code section 29-110. T3 argued that whether a forum selection clause is enforceable is a

substantive matter for the court to decide, while SBS argued it is a procedural matter for the arbitrator to decide. The district court determined the matter was substantive and ordered the parties to arbitrate T3's claims against SBS in accordance with the Distributor Agreement, but determined the Dallas forum selection clause was unenforceable and severable. Thus, the court ordered the parties to arbitrate in Idaho. The initial issue is whether the district court had jurisdiction to consider whether the Dallas forum selection clause was enforceable. For the reasons discussed below, the district court had jurisdiction to consider the enforceability of the forum selection clause.

The FAA applies to arbitrations involving commerce and provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Thus, "the FAA places arbitration agreements on an equal footing with other contracts" and therefore "requires courts to enforce them according to their terms . . . ." *Rent-A-Ctr., W., Inc., v. Jackson*, 561 U.S. 63, 67 (2010). And, "[l]ike other contracts, [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* at 68 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Pursuant to Section 4 of the FAA, a court must order the parties to proceed with arbitration if the making of the arbitration agreement is not at issue. 9 U.S.C. § 4.

As both this Court and the United States Supreme Court have said, arbitrability is a question of law for the court to decide. *Wattenbarger*, 150 Idaho at 315, 246 P.3d at 968; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). However, procedural questions related to arbitrability are not for the Court to decide, but rather are for an arbitrator to decide. *Storey Const. Inc. v. Hanks*, 148 Idaho 401, 412, 224 P.3d 468, 479 (2009) (decision on rehearing). Thus, whether the district court had jurisdiction to consider the enforceability of the Dallas forum selection clause depends on whether the clause presented a "question of arbitrability", as opposed to a question of procedural arbitrability. *Id.*

The United States Supreme Court has said that "[t]he question whether parties have submitted a particular dispute to arbitration, *i.e.,* the 'question of arbitrability,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Howsam*, 537 U.S. at 83. Put another way, "a gateway dispute about whether the parties are bound by a

6

given arbitration clause raises a 'question of arbitrability' for a court to decide." *Id.* at 84 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–46 (1995)). "Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." *Id.*

However, the Supreme Court has stated that the "question of arbitrability" does not encompass circumstances where the parties would "expect that an arbitrator would decide the gateway matter." *Id.* "'[P]rocedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). The Supreme Court stated, "issues of procedural arbitrability, *i.e.,* whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Howsam*, 537 U.S. at 85 (emphasis removed) (quoting Revised Uniform Arbitration Act § 6, comment 2). Similarly, this Court has held that "issues of procedural arbitrability, such as a condition precedent . . . ." should be decided by arbitrators as opposed to the court. *Storey Const. Inc.*, 148 Idaho at 412, 224 P.3d at 479.

First, SBS argues the United States Supreme Court's decision in *Rent-A-Center* is dispositive. In that case, the parties' arbitration agreement provided that the arbitrator had exclusive authority to resolve disputes relating to the enforceability of the arbitration agreement (the "delegation provision"). *Rent-A-Ctr., W., Inc.*, 561 U.S. at 71. The Supreme Court held that because the respondent had not challenged the "delegation provision" and rather had challenged the arbitration agreement as a whole, the Court would treat the delegation provision as valid and leave challenges to the validity of the agreement to the arbitrator. *Id.* at 72. Here, SBS argues that because its arbitration agreement with T3 provides that disputes related to the validity of the agreement will be submitted to arbitration, and T3 did not challenge that specific portion of the agreement, the outcome in this case is the same as in *Rent-A-Center*. This argument is unavailing. In *Rent-A-Center*, the Supreme Court also stated, the question of arbitrability "may be delegated to the arbitrator, so long as the delegation is *clear and unmistakable*." *Id.* at 79 (emphasis added). In this case, there was not a clear and unmistakable delegation based on provisions 21(B) and 21(C) in the arbitration agreement. While 21(B) provides that disputes related to the validity of the arbitration agreement are to be arbitrated, 21(C) provides that "dispute[s] between [T3] and [SBS] arising in connection with, or related to the interpretation of

this agreement or a claimed breach thereof . . . will be tried before a court of competent jurisdiction by a judge sitting without a jury." Because 21(C) purports to give the court the authority to interpret the agreement, there is not a "clear and unmistakable" delegation of authority that would lead to the same conclusion as in *Rent-A-Center*. *Id.*[2]

SBS next cites to several federal court of appeals cases and contends those cases stand for the proposition that "procedural matters such as forum are for an arbitrator to decide." While some federal circuits have held that "venue" is a procedural issue for the arbitrator to decide, those cases are distinguishable from this case. For example, in *Richard C. Young & Company v. Leventhal*, the First Circuit Court of Appeals addressed whether an arbitration proceeding filed in Boston, the forum mandated by the forum selection clause, could be transferred to California, where one party resided. 389 F.3d 1, 5 (1st Cir. 2004). The court stated, "[t]he dispute between the parties in this case over the location of the arbitration raises not a question of arbitrability but a procedural question and is therefore for the arbitrator, not the court." *Id.* at 4. However, the court expressly limited its holding to the situation in the present case; that is, whether the arbitration proceeding could be transferred from one state to another. *Id.* at 5. Next, the Second Circuit Court of Appeals dealt with whether a forum selection clause conflicted with a Financial Industry Regulatory Authority rule, and addressed an argument that, if the parties were required to arbitrate, the forum selection provision in the agreement required that arbitration take place in New York County. *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 654 (2d Cir. 2011). The court held that "venue is a procedural issue" to be resolved by arbitrators and the "[d]istrict [c]ourt lacked jurisdiction to resolve it." *Id.* at 655.

The Fourth Circuit Court of Appeals has held that venue disputes are appropriate for arbitrator, rather than court, resolution. *Cent. W. Virginia Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 274 (4th Cir. 2011). However, in so holding, the Fourth Circuit was addressing a situation where the parties executed two separate arbitration agreements, with differing forum

---

[2] We note that the recent United States Supreme Court decision in *Henry Schein, Incorporated, et al., v. Archer and White Sales Incorporated*, 586 U.S. ___(2019) does not impact our analysis. In *Henry Schein*, the Supreme Court addressed the "wholly groundless" exception applied by some federal courts to avoid sending a claim to arbitration when the "argument for arbitration is wholly groundless." *Id.* at 4, slip op. The Supreme Court held the "wholly groundless" exception to be inconsistent with the FAA and reiterated that when a contract delegates arbitrability to an arbitrator, the court may not override that contractual agreement. *Id.* at 5, slip op. However, the Court also reaffirmed that such delegation to an arbitrator must do so by "clear and unmistakable" evidence. *Id.* at 6, slip op (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–46 (1995)). As discussed above, in this case, there was not a clear and unmistakable delegation of authority to the arbitrator based on the conflict between provisions 21(B) and 21(C) in the arbitration agreement.

8

selection clauses. *Id.* at 269. Finally, in *LodgeWorks, L.P. v. C.F. Jordan Construction, LLC*, the parties had an arbitration clause that mandated arbitration take place in Wichita, Kansas. 506 F. App'x 747, 748 (10th Cir. 2012). The respondent filed a demand for arbitration in Wichita, and the appellant subsequently filed a demand for arbitration in Texas. *Id.* at 750. The respondent sought, and was granted, an injunction by the district court preventing the appellant from arbitrating outside of Wichita. *Id.* The Tenth Circuit Court of Appeals vacated the injunction, stating that "venue selection" is for an arbitrator, rather than a court, to decide. *Id.* at 750–51. However, in *Lodgeworks*, the forum selection clause was not challenged based on a contract defense, like unconscionability, as is the case here.

While the foregoing cases deemed venue an issue for the arbitrator, those cases were not dealing with a challenge to the forum selection clause based on a contract defense like unconscionability. Other courts, including the Ninth Circuit Court of Appeals, have decided whether a forum selection clause is unenforceable based on contract defenses like unconscionability. These circuit courts suggest that when a forum selection clause is challenged based on a contract defense, the issue of forum selection is a substantive issue for the court. For example, in *Nagrampa v. MailCoups, Incorporated*, the appellant had challenged a forum selection clause in the arbitration agreement as unconscionable. 469 F.3d 1257, 1287 (9th Cir. 2006). The Ninth Circuit stated that the "district court properly undertook to decide whether the arbitration provision in the . . . agreement is valid and enforceable within the meaning of FAA § 2 . . . ." *Id.* at 1294. However, the court went on to say "the district court erred by failing to analyze whether there is evidence of procedural unconscionability[.]" *Id.* Thus, the Ninth Circuit did not state that the district court lacked jurisdiction to consider the forum selection challenge, and rather stated the district court should have considered the unconscionability argument. *Id.* at 1295.

Similarly, the Seventh Circuit Court of Appeals has considered whether a forum selection clause contained in an arbitration agreement was unenforceable. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 778 (7th Cir. 2014). The court stated, "[l]ike other contractual provisions, forum selection clauses—even those designating arbitral fora—are not immune from the general principle that unconscionable contractual provisions are invalid." *Id.* This case again implies that courts, rather than arbitrators, have jurisdiction to consider the enforceability of forum selection clauses in arbitration agreements. Lastly, the Supreme Court of Washington has stated,

"Washington courts have regularly decided whether choice of law and forum selection clauses in arbitration clauses are enforceable." *Saleemi v. Doctor's Assocs., Inc.*, 292 P.3d 108, 112 (Wash. 2013).

As the district court noted, the foregoing cases indicate that when a forum selection clause is challenged pursuant to a contract defense, as is the case here, then the issue is substantive and for the court to decide. This approach is consistent with Idaho law. In addressing whether a court should compel arbitration, this Court stated, "the court's scope of review is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the parties' contract." *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 201, 177 P.3d 944, 948 (2007). Thus, under *Mason*, the district court needed to ascertain whether SBS was "making a claim which on its face [was] governed by the parties' contract." *Id.* Because SBS was moving to compel arbitration in Dallas, the district court needed to determine whether that claim was in accord with the parties' contract. *Id.* And, because T3 challenged the forum selection clause based on unconscionability, the district court's review of that clause was appropriate.

Here the district court was deciding whether the forum selection clause was enforceable. Such a determination is distinguishable from procedural arbitrability issues "such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate" which the Supreme Court has held "are for the arbitrators to decide." *Howsam*, 537 U.S. at 85. Rather, the district court's determination was akin to a determination of "whether the parties are bound by a given arbitration clause" which raises a "'question of arbitrability' for the court to decide." *Id.* at 84 (citation omitted). Accordingly, the district court had jurisdiction to consider the enforceability of the forum selection clause.

**B.      The district court did not err when it ordered arbitration to occur in Idaho instead of Dallas.**

After the district court determined it had jurisdiction to consider the enforceability of the Dallas forum selection clause, it determined that Texas law applied to the enforceability of the forum selection clause. Applying Texas law, the district court concluded that the forum selection clause was unenforceable and arbitration would occur in Idaho, not Dallas. In reaching its decision, the district court stated that a Texas court would consider Idaho's strong public policy against forum selection clauses as evidenced in Idaho Code section 29-110(1), and thus not enforce the forum selection clause. Neither party challenges the district court's determination

10

that Texas law applies to determine the enforceability of the forum selection clause. Rather, SBS contends the district court erred when it determined that the forum selection clause was unenforceable under Texas law. For the reasons discussed below, the district court did not err when it determined the forum selection clause was unenforceable under Texas law.

As an initial matter, Texas courts generally enforce forum selection clauses. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008). However, this general rule is not without exception. One such exception provides that a forum selection clause will not be enforced when the party opposing the forum selection clause clearly shows enforcement would be "unreasonable and unjust[.]" *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). A forum selection clause comes within such exception when "enforcement [of the forum selection clause] would contravene a strong public policy of the forum where the suit was brought[.]" *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 231–32; *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 675 (Tex. 2009). In that instance, a Texas court will not enforce the forum selection clause. *In re AIU Ins. Co.*, 148 S.W.3d at 112.

The approach taken by Texas courts arises from the United States Supreme Court's decision in *Bremen*, 407 U.S. at 1, 15. There, the United States Supreme Court dealt with an international forum selection clause that stated disputes between the parties were to be resolved "before the London Court of Justice." *Id.* at 2. The Court stated, "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.* at 15. However, in *Bremen* the Supreme Court stated public policy concerns did "not reach" the case and therefore did not hold the clause unenforceable on that ground. *Id.* at 15–16.

This Court has dealt with the enforceability of a forum selection clause in a case similar to the current case, though not in the context of arbitration, and applied *Bremen's* reasoning to hold the clause unenforceable. *See Cerami-Kote, Inc. v. Energywave Corp.*, 116 Idaho 56, 59–60, 773 P.2d 1143, 1146–47 (1989). There, the parties had chosen Florida law to govern interpretation of their agreement. *Id.* at 58, 773 P.2d at 1145. This Court stated that because the "forum selection clause violates the public policy expressed in I.C. § 29-110, we conclude that the Florida courts would refuse to enforce the clause." *Id.* at 60, 773 P.2d at 1147. In so noting, this Court quoted language stating that Florida courts would invalidate a forum selection clause

11

if it would violate a strong public policy in either the forum where suit is *brought* "or the forum from which suit has been *excluded*." *Id.* (italics altered from original) (quoting *Mar. Ltd. P'ship v. Greenman Advert. Assocs., Inc.*, 455 So. 2d 1121, 1123 (Fla. Dist. Ct. App. 1984)). The language regarding the "excluded" forum came from the *Greenman* case in Florida, and is not included in *Bremen*, which only contemplates the policy "of the forum in which suit is *brought*[.]" *M/S Bremen*, 407 U.S. at 15 (emphasis added).

First, SBS contends the district court erred because in its decision that the forum selection clause was unenforceable, the district court cited to *Bremen* but included the "excluded" forum language from *Greenman*. While the district court misquoted or mis-cited *Bremen*, this mistake appears to be only a clerical error given the court's further analysis. The district court's analysis that follows is proper and applies Texas case law that has adopted the test articulated in *Bremen*. Thus, the incorrect quote or citation does not render the decision erroneous. In any event, as discussed below, the district court reached the correct outcome and is therefore affirmed. *See Boise Tower Assocs., LLC v. Hogland*, 147 Idaho 774, 782, 215 P.3d 494, 502 (2009) ("Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory."); *Henderson v. Henderson Inv. Properties, L.L.C.*, 148 Idaho 638, 645 n.2, 227 P.3d 568, 575 n.2 (2010) (J. Jones dissenting) ("Even if the district court was required to specifically state that the [award] was based upon the valid assertion ground, the Court can apply the 'right result, wrong reason,' analysis we have often employed in such circumstances.") (citation omitted).

As noted above, Texas case law states that forum selection clauses will not be enforced when "enforcement [of the forum selection clause] would contravene a strong public policy of the forum where the suit was brought . . . ." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 231–32; *see also In re Int'l Profit Assocs., Inc.*, 274 S.W.3d at 675. Thus, when the forum where suit is brought has a strong public policy against forum selection clauses, Texas courts will not enforce such a clause. *In re AIU Ins. Co.*, 148 S.W.3d at 112. Indeed, Idaho has a strong public policy against forum selection clauses as evidenced in Idaho Code section 29-110(1) which concerns the "[l]imitations on right to sue under contract or franchise agreement." It provides in relevant part that:

> Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract in Idaho tribunals, or which limits the time within which he may thus enforce his rights, is void as it is against

12

the public policy of Idaho. Nothing in this section shall affect contract provisions relating to arbitration so long as the contract does not require arbitration to be conducted outside the state of Idaho.

I.C. § 29-110(1). Thus, enforcement of the Dallas forum selection clause would contravene the strong public policy articulated in Idaho Code section 29-110(1).

SBS argues that the district court's decision "did not give proper effect to Idaho's choice of law statute" Idaho Code section 28-1-301(a). SBS contends that because the parties validly chose Texas law to govern the agreement in accordance with Section 28-1-301(a), then the rest of Idaho law no longer applies, and Section 29-110(1) would be inapplicable. This argument is unavailing. The parties' selection of Texas law is precisely why Section 29-110(1) was considered by the district court. As analyzed above, Texas law considers the public policy of the forum where suit is brought to determine if a forum selection clause is enforceable. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 231–32. Here, T3 brought suit in Idaho. The district court, applying Texas law, cited to Idaho Code section 29-110(1) as evidence of the public policy in Idaho—the forum where suit was brought—disfavoring forum selection clauses. The district court did not ignore the selection of Texas law, and in fact applied Texas law in determining whether the forum selection clause was enforceable. Thus, SBS's argument that Section 28-1-301(a) was disregarded is without merit.

Lastly, SBS argues that the arbitration award must be vacated under Section 5 of the FAA because Section 5 of the FAA was violated when arbitration did not take place in Dallas. This argument is without merit. Section 5 of the FAA states in pertinent part that, "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed . . . ." 9 U.S.C. § 5. SBS cites to *PoolRe Insurance Corporation v. Organizational Strategies, Incorporated*, to support its proposition that because the arbitrators in this case were not from Dallas the award must be vacated. 783 F.3d 256, 264 (5th Cir. 2015). This argument is unavailing. First, the United States Supreme Court has held "that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). Thus, a claim under Section 5 of the FAA would not provide ground for vacatur. And, in *PoolRe*, the Fifth Circuit distinguished between "arbitrator-selection clauses" and "forum selection clauses[.]" *Id.* at 263–65. "Arbitrator-selection clauses" contained "contract-specified method[s]" for selecting arbitrators. *See id.* at 263–64 (stating arbitrator was to be "selected by the Anguilla, B.W.I.

13

Director of Insurance."); *see also Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 673–74 (5th Cir. 2002) (agreement required AAA submit a list of nine arbitrators that parties would take turns crossing off. Instead, AAA submitted a list of fifteen arbitrators and asked parties to strike impermissible ones, then rank in order of preference). Here, the arbitration agreement stated only that the arbitration would occur in AAA's Dallas office. It did not contain a contract-specific provision stating how specific arbitrators would be chosen as in *PoolRe*. Thus, even if Section 5 of the FAA could serve as a basis for vacatur, it does not do so here.

In sum, because enforcement of the parties' Dallas forum selection clause would contravene the strong public policy articulated in Idaho Code section 29-110(1), the forum selection clause is unenforceable under Texas law. *In re AIU Ins. Co.*, 148 S.W.3d at 112. The analysis under Section 5 of the FAA does not change this outcome. Accordingly, the district court did not err when it determined the forum selection clause was unenforceable.

After the district court determined the forum selection clause was unenforceable, it went on to consider whether the clause was severable from the arbitration agreement, concluding that it was. Thus, the district court stated, the parties were required to arbitrate their claims in accordance with the agreement, absent the forum selection provision. SBS has not appealed the severability of the clause nor has it offered any argument on appeal that the district court erred in determining the offending forum selection clause was severable. *See Akers v. Mortensen*, 160 Idaho 286, 288, 371 P.3d 340, 342 (2016) ("a party waives an appellate issue that is not supported with relevant argument or authority."). Thus, the district court's determination that the forum selection provision was severable need not be considered.

## C. The district court did not abuse its discretion in overruling SBS's claim of attorney-client privilege.

In March 2016, a few months prior to the arbitration proceeding, the district court ruled on both SBS and T3's motions to compel documents being withheld pursuant to attorney-client privilege. After an in-camera review and subsequent hearing, the district court denied SBS's motion to compel but granted T3's motion to compel. SBS was required to produce 35 email communications between corporate representatives for SBS and its in-house counsel Michael Dunlap. The district court noted that Dunlap was not only in-house counsel for SBS, but also the corporate secretary. The court found the majority of the emails at issue concerned factual matters and business advice made in Dunlap's role as corporate secretary rather than legal issues. On appeal, SBS contends the district court abused its discretion in ordering it to produce the

14

documents; however, SBS agrees to limit its appeal to the seven documents that form the crux of this issue. Those documents are Exhibits 157, 245, 267, 327, 336, 352, and 356. For reasons discussed below, SBS waived its right to appeal the attorney-client privilege issue by stipulating to the admission of the documents at arbitration.

As a threshold matter, SBS waived the issue of privilege when it stipulated to the admission of the email documents at an evidentiary hearing that took place as part of the arbitration proceeding. This Court has said that it will not consider issues on appeal that were not objected to at the lower court. *W. Heritage Ins. Co. v. Green*, 137 Idaho 832, 838, 54 P.3d 948, 954 (2002). Similarly, this Court has said that, "[n]ormally, a party waives an objection to the admission of evidence by failing to object at the time of its admission." *State v. Ellington*, 151 Idaho 53, 64, 253 P.3d 727, 738 (2011). In the context of a motion in limine, this Court has said that if "the trial court unqualifiedly rules on the admissibility of evidence prior to trial no further objection is required to preserve the issue for appeal." *Kirk*, 141 Idaho at 702, 116 P.3d at 32. However, "[i]f the trial court decides to wait and hear the actual foundation laid before determining whether to admit or exclude evidence, the moving party is required to continue to object as the evidence is presented." *Id.* at 701, 116 P.3d at 31.

In this case, prior to arbitration, the district court ruled that the email documents SBS sought to conceal were not privileged, and thus ordered SBS to produce the documents. However, at arbitration, SBS stipulated to the admission of the documents. In the Panel's interim award, the Panel states as a preliminary issue that during the evidentiary hearing "the parties stipulated to the admission of all exhibits except" for seven exhibits which are not the exhibits at issue in this appeal. Thus, SBS stipulated to the admission of the email exhibits it contends are privileged.

SBS contends that it was not required to object on privilege grounds at arbitration because the district court had already ruled that the email documents were not privileged. SBS argues that objecting to the admission of the documents at arbitration would have "subjected SBS to antagonizing the panel" and cause the panel to "view SBS's counsel with mistrust and suspicion for trying to get the Panel to rule contrary to the District Court." This argument is unpersuasive. The district court compelled SBS to produce the email documents to T3; the district court did not state that the documents had to be admitted at arbitration. Additionally, not only did SBS not object to the admission of the email documents, but it actually stipulated to

15

their admission at arbitration. *See Ellington*, 151 Idaho at 64, 253 P.3d at 738 ("Normally, a party waives an objection to the admission of evidence by failing to object at the time of its admission."). The approach taken by SBS is disingenuous, as it allows a party to stipulate to the admission of evidence, then later appeal and predicate error on the admission of that same evidence. Though SBS cites to *Kirk* for the proposition that it did not need to continue to object after the district court ordered it to produce the emails, *Kirk* dealt with the admissibility of evidence prior to trial. *Kirk*, 141 Idaho at 702, 116 P.3d at 32. *Kirk* did not address a motion to compel during a discovery dispute that results in a court decision that is prior to, and separate from, an arbitration or court proceeding. Thus, for the foregoing reasons, SBS waived the privilege issue when it did not object, and instead stipulated to, the admission of the email documents at the arbitration hearing.

**D. The district court did not err in denying SBS's motion to vacate the arbitration award.**

In March 2017, the district court granted T3's motion to confirm the arbitration award and denied SBS's motion to vacate or, alternatively, modify the arbitration award. SBS argues the district court erred in denying its motion to vacate the award based on the Panel exceeding its powers. Specifically, SBS contends the Panel exceeded its powers by,

> (i) ignoring the parties' choice of Texas law to declare the distributorship "constructively terminated" based on Connecticut/New Jersey statutes; (ii) irrationally ruling T3 could recover future losses as if the contract continued while also terminating the contract and excusing T3 from its post-termination obligations in the contract; (iii) awarding gross profits in manifest disregard of Texas law requiring proof of "net" loss; (iv) awarding 8-12 years of future damages despite an undisputed month-to-month term of the contract; and (v) re-writing the contract to award attorneys' fees and expenses on the basis of AAA procedural rules, and doubling the fees incurred by T3 to award an amount far beyond the express contractual limit of "actual damages for commercial loss."

T3 contends that SBS has not articulated any proper grounds for vacatur, or alternatively, that SBS's arguments are without merit. For the reasons discussed below, we conclude the district court did not err when it denied SBS's motion to vacate the arbitration award.

As noted above, the Distributor Agreement provided that "[a]ll matters relating to arbitration will be governed by the [FAA.]" And, "except to the extent governed by the [FAA] . . . or other federal law, this Agreement, the distributorship and the relationship between [T3] and [SBS]" will be governed by the laws of Texas. The FAA provides that a court must

16

confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

The United States Supreme Court has stated that, "[u]nder the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). The Court explained "[t]hat limited judicial review . . . 'maintain[s] arbitration's essential virtue of resolving disputes straightaway.'" *Id.* (quoting *Hall St. Assocs., L.L.C. v. Mattel*, Inc., 552 U.S. 576, 588 (2008)). "If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* at 568–69 (quoting *Hall St.*, 552 U.S. at 588).

Section 10(a)(4) of the FAA allows courts to vacate an arbitration award "where the arbitrators exceeded their powers . . . ." 9 U.S.C. § 10. However, the Supreme Court has cautioned, "[a] party seeking relief under [Section 10(a)(4)] bears a heavy burden. 'It is not enough . . . to show that the [Arbitration Panel] committed an error—or even a serious error.'" *Oxford Health Plans LLC*, 569 U.S. at 569 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). The Supreme Court explained that "[b]ecause the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC*, 569 U.S. at 569 (quoting *Eastern Assoc. Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)). A court may overturn an arbitrator's decision only when the award "'simply reflects [the Arbitrator's] own notions of economic justice' rather than 'drawing its essence from the contract[.]'" *Id.* Thus, the Supreme Court has stated, "[u]nder § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all." *Id.* at 573.

The Supreme Court continued to elaborate on the heavy burden a party faces in attempting to vacate an arbitration award under Section 10(a)(4) by stating,

> [s]o long as the arbitrator was "arguably construing" the contract . . . a court may not correct his mistakes under § 10(a)(4). The potential for those mistakes is the price of agreeing to arbitration. As we have held before, we hold again: "It is the arbitrator's construction of the contract which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." The arbitrator's construction holds, however good, bad, or ugly.

17

*Id.* at 572–73 (citations omitted).

While Sections 10(a) and 11 provide the statutory bases for vacatur and modification under the FAA, certain circuit courts have delineated additional, non-statutory grounds for vacatur including if the award was a manifest disregard of law, completely irrational, and where an award violates public policy. *Hall St.*, 552 U.S. at 583–84; *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009). However, in 2008 the United States Supreme Court stated that Sections "10 and 11 respectively provide the FAA's *exclusive* grounds for expedited vacatur and modification." *Hall St.*, 552 U.S. at 584 (emphasis added). However, the Supreme Court went on to say that "[i]n holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well." *Id.* at 590. Following *Hall Street*, a circuit split developed as to whether the non-statutory grounds for vacatur were still valid.

Some circuit courts, including the First, Fifth, Seventh, and Eleventh, follow the approach that non-statutory grounds for vacatur, including manifest disregard, can no longer form a basis for vacating an award under the FAA following *Hall Street*. The Fifth Circuit Court of Appeals stated, "manifest disregard of the law is no longer an independent ground for vacating arbitration awards under the FAA." *Citigroup Glob. Markets, Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir. 2009); *see also Ramos-Santiago v. United Parcel Serv.*, 524 F.3d 120, 124 n.3 (1st Cir. 2008)[3] (stating in dicta, "[w]e acknowledge the Supreme Court's recent holding in [*Hall Street*] that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the [FAA]."). Similarly, the Eleventh Circuit Court of Appeals stated, "judicially-created bases for vacatur are no longer valid in light of *Hall Street*. In so holding, we agree with the Fifth Circuit that the categorical language of *Hall Street* compels such a conclusion." *Frazier v. CitiFinancial Corp.*, LLC, 604 F.3d 1313, 1324 (11th Cir. 2010); *see also Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*, 660 F.3d 281, 284 (7th Cir. 2011) ("Th[e] list in [Section 10(a)] is exclusive; neither judges nor contracting parties can expand it.").

In contrast, other circuits, including the Second, Fourth, Sixth, and Ninth, have not held *Hall Street* to completely foreclose all application of non-statutory grounds for vacatur under the

---

[3] However, the First Circuit Court of Appeals more recently stated, "[w]e need not and do not decide now whether manifest disregard remains as an available basis for vacatur. However, if it does survive, we agree with the courts that have held that *Hall Street* compels the conclusion that it does so only as a judicial gloss on § 10." *Ortiz-Espinosa v. BBVA Sec. of Puerto Rico, Inc.*, 852 F.3d 36, 46 (1st Cir. 2017).

18

FAA. The Ninth Circuit stated, "[w]e have already determined that the manifest disregard ground for vacatur is shorthand for a statutory ground under the FAA . . . ." *Comedy Club, Inc.*, 553 F.3d at 1290. It went on to say, "[t]he Supreme Court did not reach the question of whether the manifest disregard of the law doctrine fits within §§ 10 or 11 of the FAA." *Id.*; *see also Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008) ("[*Hall Street*] did not, we think, abrogate the 'manifest disregard' doctrine altogether.") (*rev'd on other grounds* by *Stolt-Nielsen*, 559 U.S. at 662). Similarly, the Sixth Circuit said that *Hall Street* "significantly reduced the ability of federal courts to vacate arbitration awards for reasons other than those specified in 9 U.S.C. § 10, but it did not foreclose federal courts' review for an arbitrator's manifest disregard of the law." *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415, 418 (6th Cir. 2008); *see also Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012) (stating, "manifest disregard continues to exist as either an independent ground for review or as a judicial gloss" but not deciding between the two).

Here, SBS argues the arbitration award should be vacated for several reasons including the non-statutory grounds of manifest disregard of law, complete irrationality, public policy, and the statutory ground of the arbitrators exceeding their powers. T3 contends that this Court should follow the Fifth Circuit's reasoning and conclude that the exclusive grounds for vacatur are in Section 10 of the FAA, relevant here being whether the arbitrators exceeded their power. SBS responds that its arguments as to manifest disregard of law, complete irrationality, and public policy demonstrate how the arbitrators exceeded their powers, which is a valid ground for vacatur under Section 10(a)(4). The district court stated it "need not determine which circuit's law governs since [SBS's] motion would fail under either." Thus, the district court applied the broader Ninth Circuit approach and denied SBS's motion to vacate, thus confirming the award in full. We need not decide which circuit's approach to take, as even under the Ninth Circuit approach, which considers the non-statutory grounds for vacatur, SBS's arguments fail. Each of SBS's arguments is addressed in turn below.

### 1. Constructive Termination

SBS first argues that the Panel exceeded its power by awarding T3 the value of the distributorship under a theory of "constructive termination" because it cited to state law outside of Texas. The Panel stated that when SBS gave the same "exclusive" account protection rights to T3, IBF, and DocuSource, SBS "diluted the value" of the Protection Rights given to T3 in the

19

Distributor Agreement. The Panel then string-cited to a Second Circuit case and cases from Connecticut, New Jersey, and Florida. The Panel concluded that SBS's breach of the Distributor Agreement damaged T3's business so much that the Distributor Agreement now "fails of its essential purpose" and stated T3 was entitled to constructive termination damages. The district court stated that the fact that the Panel cited to cases outside of Texas does not mean it failed to apply Texas law in accordance with the Distributor Agreement. The district court also noted that "while Texas has not expressly applied a constructive termination theory under the circumstances presented here, [SBS] has not pointed to any Texas authority contradicting" the Panel's theory which the Panel intentionally ignored. For the reasons to be discussed, the district court did not err.

First, the Panel awarded the value of the distributorship ($566,143.61) under three alternative theories: breach of contract, tortious interference, and the Texas DTPA. However, SBS has only challenged the award under the "constructive termination" theory, which was analyzed only under the breach of contract section. SBS does not challenge the award under the tortious interference theory or the Texas DTPA. This Court has said that, "[w]hen a decision is 'based upon alternative grounds, the fact that one of the grounds may be in error is of no consequence and may be disregarded if the judgment can be sustained upon one of the other grounds.'" *Andersen v. Prof'l Escrow Servs.*, Inc., 141 Idaho 743, 746, 118 P.3d 75, 78 (2005) (quoting *MacLeod v. Reed*, 126 Idaho 669, 671, 889 P.2d 103, 105 (Ct. App.1995)). This Court went on to state that because the appellants in *Anderson* failed to "challenge on appeal the district court's alternative grounds for granting . . . judgment against them, the dismissal of their case must be affirmed." *Id.* Here, because SBS only challenges the constructive termination ruling of the Panel, but not the award of identical damages under the two other theories, the damages can be affirmed on the unchallenged theory. *See id.*

Moreover, "manifest disregard . . . requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'" *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (quoting *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007)). "There must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Id.* (quoting *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004)). SBS has not shown that the Panel manifestly disregarded Texas law, which requires the Panel be "aware of the law and

20

intentionally disregard[] it." *Id.* Here, the Panel states that Texas law governs the agreement and the face of the arbitration award states that the Panel is awarding damages pursuant to Texas law. The mere fact that other state cases were cited in the award does not rise to an "intentional disregard" of the law that amounts to manifest disregard. *See Bosack*, 586 F.3d at 1104.

As to SBS's argument that T3 did not seek a constructive termination, this argument is without merit. The Distributor Agreement provides that,

> (B) . . . THE ARBITRATORS SHALL HAVE THE RIGHT TO AWARD OR INCLUDE IN THEIR AWARD *ANY RELIEF WHICH THEY DEEM PROPER* IN THE CIRCUMSTANCES, INCLUDING WITHOUT LIMITATION, MONEY DAMAGES (WITH INTEREST ON UNPAID AMOUNTS FROM DATE DUE), SPECIFIC PERFORMANCE, INJUNCTIVE RELIEF. PROVIDED THAT THE ARBITRATOR DOES NOT HAVE THE RIGHT TO AWARD EXEMPLARY OR PUNITIVE DAMAGES.

Thus, the Distributor Agreement itself states the Panel can "award any relief which [it] deems proper." And, T3 put value of distributorship at issue when it sought revocation of acceptance, and additionally broadly requested relief as may be available and as justice requires. Thus, the district court did not err in finding the Panel did not exceed its authority in ordering damages based on constructive termination.

## 2. Double Recovery

Next, SBS argues the Panel's decision to terminate the contract and award future damages was double recovery and thus completely irrational. SBS contends the Panel awarded double recovery because T3 received both termination damages and damages for future losses. The district court stated the future account protection damages were based on IBF and DocuSource's sales to T3's protected accounts, while the value of the distributorship damages were based on T3's sales to T3's protected accounts. Thus, the court said, there was no overlap in damages, no double recovery, and no grounds for vacatur.

Here again, SBS's argument is limited to the Panel's decision under breach of contract damages, but does not address that the panel awarded these identical damages under the theories of tortious interference and the Texas DTPA. Regardless, as stated above, the Supreme Court has cautioned, "[a] party seeking relief under [Section 10(a)(4)] bears a heavy burden. . . . 'It is not enough . . . to show that the [Arbitration Panel] committed an error—or even a serious error.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quoting *Stolt-Nielsen*, 559 U.S. at 671). The Supreme Court explained that "[b]ecause the parties 'bargained for the arbitrator's

21

construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Id.* (citation omitted); *see also D.R. Horton-Texas, Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App. 2014) ("[A]n arbitrator does not exceed his authority simply because he may have misinterpreted the contract or misapplied the law.").

Here, SBS simply asks this Court to second guess the district court's analysis. SBS has not carried its "heavy burden" and shown that the arbitral decision was not "arguably construing or applying the contract" and thus the decision must stand. *Oxford Health Plans LLC*, 569 U.S. at 569 (citation omitted). As noted by the district court, the Panel awarded two categories of damages that were not duplicative. And, the "elements of damages are clearly derived from the parties' agreement." Thus, the Panel did not exceed its authority, and the district court did not err in so determining.

### 3. Gross Profits

SBS next argues the Panel manifestly disregarded Texas law when it awarded lost commissions based on gross profits rather than T3's net commission. The district court stated that the Panel accepted the calculations from Robert Taylor, T3's expert, who calculated the unpaid commission amount by taking "the product retail price paid to IBF and DocuSource by T3's protected customer on each infringing order and deduct[ing] therefrom the IBF and DocuSource's base price for the product[.]" The court went on to say that there was no indication the Panel manifestly disregarded the law in "accepting Mr. Taylor's calculations. Rather, it found that the unrotated commissions earned by IBF and DocuSource on sales made to T3's protected accounts qualified as direct contract damages to T3. . . . The Panel never indicated it was awarding such damages as lost profits." The district court concluded SBS had not shown that the arbitrators recognized the correct law and refused to apply it, as is required to satisfy manifest disregard.

As noted, "manifest disregard requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'" *Bosack*, 586 F.3d at 1104 (quoting *Collins*, 505 F.3d at 879). "There must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Id.* (quoting *Payne*, 374 F.3d at 675). And, "[s]o long as the arbitrator was 'arguably construing' the contract . . . a court may not correct his mistakes under § 10(a)(4). The

22

potential for those mistakes is the price of agreeing to arbitration." *Oxford Health Plans LLC*, 569 U.S. at 572–73 (citations omitted). "'It is the arbitrator's construction of the contract which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* (citation omitted).

Here, as noted by the district court, the Panel stated in awarding damages that "[e]ach of T3's damage categories are recoverable under Texas law because they are actual damages for commercial loss that naturally flow from and were reasonably foreseeable consequences of SBS's breach." SBS has not carried its burden in showing the Panel recognized the correct law and intentionally disregarded it. *See Bosack*, 586 F.3d at 1104. Rather, the Panel accepted the calculations of T3's expert, and stated it was awarding damages pursuant to Texas law. Thus, the district court did not err when it determined the Panel did not exceed its authority.

#### 4. Future lost commissions

Next, SBS argues the Panel manifestly disregarded the month-to-month nature of the contract to award future lost commissions to T3. SBS contends the Panel erred when it accepted Mr. Taylor's calculations based on the "one times annual revenue metric" as T3's future losses were limited to the monthly term of the contract. The Panel stated that SBS "uses a metric of approximately one times annual revenue when it acquires distributors" and that metric was the same used when Teply purchased part of Thurston's business. The Panel then stated it "finds that T3 and Taylor's use of the one times annual revenue metric fairly represents the present value of future commission rights." In so finding, the Panel cited to Texas law, *AZZ Inc. v. Morgan*, 462 S.W.3d 284, 289–90 (Tex. App. 2015) (discussing Texas law on lost profits). The district court stated that "the Panel evidently found Mr. Taylor's proffered metric satisfied" the standard articulated in *Morgan*. Thus, the district court stated SBS had not shown the Panel manifestly disregarded the law; rather, SBS had only shown that the Panel "did not follow SBS's proposed measure of damages."

Here again, the analysis is the same as that for lost profits analyzed above. SBS has not carried its burden in showing the Panel recognized the correct law and intentionally disregarded it. *See Bosack*, 586 F.3d at 1104. Rather, the Panel cited to Texas law that supports its acceptance of Mr. Taylor's calculations of lost future commissions. Thus, the district court did not err when it determined the Panel did not exceed its authority.

### 5. Doubling the award of attorney fees

Lastly, SBS argues the Panel disregarded Texas law to award T3 doubled attorney fees and expenses. The Panel awarded T3 $2,449,208.14 in attorney fees and $437,126.28 in costs. The Panel stated it "finds that an award of attorneys' fees and expenses is authorized by Texas law, under the Distributor Agreement, and because such a determination was submitted to the Panel by the parties." The Panel also stated Section 21(B) of the Distributor Agreement provides that "the arbitrators shall have the right to award or include in their award any relief which they deem proper in the circumstances." And, that "[AAA] Rule 47(c) provides that the Panel 'may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.'"

SBS argues the Panel could not rely on AAA Rule 47 and that the doubled attorney fee amount violates the contractual limit of actual damages for commercial loss. The district court stated that SBS could not establish that the Panel had manifestly disregarded the law or that its decision was completely irrational. The court reasoned that the Panel was interpreting the Distributor Agreement as regards to fees and costs "and applied the law in accordance with its interpretation. While Safeguard argues that the distributorship agreement requires that Texas law—and only Texas law—governs the determination of fees and costs, the Panel found otherwise." The district court also noted that the choice-of-law provision specifying Texas law does not state it will apply to a post-hearing determination of fees by an arbitrator. Instead, the court reasoned, such determination of fees was governed by 21(B) which allows arbitrators to award "any relief which they deem proper in the circumstances." Thus, the court stated, because the Panel had interpreted the parties' agreement, the Panel's construction would not be vacated by the district court.

Here again, "[i]t is not enough . . . to show that the [Arbitration Panel] committed an error—or even a serious error." *Oxford Health Plans LLC*, 569 U.S. at 569 (quoting *Stolt-Nielsen*, 559 U.S. at 671). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC*, 569 U.S. at 569 (citation omitted). And, "manifest disregard . . . requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'" *Bosack*, 586 F.3d at 1104 (quoting *Collins*, 505 F.3d at 879). "There must be some evidence in

24

the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Id.* (quoting *Payne*, 374 F.3d at 675).

In this case, the Panel was "arguably construing or applying the contract" as it referenced various provisions in the Distributor Agreement, and that it was applying them. *See Oxford Health Plans LLC*, 569 U.S. at 569. And, there is no evidence that the arbitrators "were aware of the law and intentionally disregarded it." *Bosack*, 586 F.3d at 1104 (citation omitted). Rather, the Panel stated it "finds that an award of attorneys' fees and expenses is authorized by Texas law, under the Distributor Agreement, and because such a determination was submitted to the Panel by the parties." Accordingly, the district court did not err in determining SBS has not carried its burden in showing the Panel exceeded its authority in ordering doubled attorney fees.

**E.      We do not award attorney fees on appeal.**

Both parties request costs on appeal, but only T3 requests attorney fees on appeal. Because SBS does not request attorney fees, and because SBS is not the prevailing party, SBS is not entitled to attorney fees on appeal. T3 contends it is entitled to attorney fees on appeal under Texas law for both its breach of contract and Texas DTPA claims "upon a remand back to the Arbitration Panel." T3 also contends this Court can award it attorney fees under Idaho Code section 12-121 or Texas Appellate Rule 45, which both allow for attorney fees in frivolous appeals. For the reasons discussed below, we do not award attorney fees on appeal.

T3 cites to *Cap Rock Electric Cooperative Incorporated v. Texas Utilities Electric Company* which states, "once a right to attorney's fees is established, the award may include attorney's fees for any appeal."  874 S.W.2d 92, 102 (Tex. App. 1994). However, *Cap Rock* was not dealing with an award of attorney fees on appeal following arbitration. *Id.* Furthermore, T3's argument ignores Texas case law stating that underlying causes of action dealt with in arbitration merge into the award and no longer form the statutory basis for an award of fees. *See Kline v. O'Quinn*, 874 S.W.2d 776, 785 (Tex. App. 1994), *as supplemented on denial of reh'g* (May 12, 1994). Similarly, when an arbitration award contains an award of attorney fees "a trial court may not award additional attorney fees for enforcing or appealing the confirmation of the award . . . ." *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 436 (Tex. App. 2004). Perhaps recognizing this, T3 states it can be awarded fees "upon a remand back to the Arbitration Panel." However, T3 cites no authority for such a remand. Accordingly, based on the lack of statutory support in the FAA,

as well as Texas case law, T3 is not entitled to attorney fees on appeal pursuant to its breach of contract and Texas DTPA claims.

We also decline to award attorney fees on appeal pursuant to Idaho Code section 12-121 or Texas Appellate Rule 45. This Court has said "if the award of attorney fees is a discretionary matter governed by statute, then it is considered to be procedural, requiring application of the forum law." *Carroll v. MBNA Am. Bank*, 148 Idaho 261, 270, 220 P.3d 1080, 1089 (2009). Texas Appellate Rule 45 provides that if a court "determines that an appeal is frivolous, it may . . . award each prevailing party just damages." Tex. R. App. P. 45. While not statutory, the Rule does impute discretion to the court. Thus, this Court could apply section 12-121. *Houston v. Whittier*, 147 Idaho 900, 911, 216 P.3d 1272, 1283 (2009). Pursuant to section 12-121, this Court, in any civil action, may award reasonable attorney fees to the prevailing party. I.C. § 12-121; *Doe v. Doe (2016-7)*, 161 Idaho 67, 79, 383 P.3d 1237, 1249 (2016). "This Court has held that attorney fees can be awarded on appeal under Idaho Code section 12-121 'only if the appeal was brought or defended frivolously, unreasonably, or without foundation.'" *Id.* (citation omitted). However, "[f]ees will generally not be awarded for arguments that are based on a good faith legal argument." *Easterling v. Kendall*, 159 Idaho 902, 918, 367 P.3d 1214, 1230 (2016).

In this case, we decline to award attorney fees on appeal. The issues as to district court jurisdiction and forum selection clause enforceability are novel issues and SBS provided cogent argument and authority for its issues presented on appeal. SBS's arguments were not frivolous, unreasonable, or without foundation. Accordingly, we do not award attorney fees on appeal.

## V.    CONCLUSION

In sum, we hold that 1) the district court had jurisdiction to consider T3's challenge to forum; 2) the district court did not err when it determined the forum selection clause was unenforceable; 3) SBS waived the issue of privilege when it stipulated to the admission of documents at the hearing; 4) the district court did not err in denying SBS's motion to vacate or modify the arbitration award; and 5) no attorney fees are awarded on appeal. Costs to T3.

Justices HORTON, BRODY, BEVAN and STEGNER, **CONCUR.**

26