# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48735

| | | |
|---|---|---|
| In the Matter of: John Doe I, <br> A Child Under Eighteen (18) Years of Age. <br> ----------------------------------------------------- <br> STATE OF IDAHO, DEPARTMENT OF <br> HEALTH AND WELFARE, <br><br>   Petitioner-Respondent, <br><br> v. <br><br> JOHN DOE (2021-14), <br><br>   Respondent-Appellant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Boise, August 2021 Term <br><br> Opinion Filed: September 27, 2021 <br><br> Melanie Gagnepain, Clerk |

Appeal from the Magistrate Court of the Third Judicial District, State of Idaho, Canyon County. Courtnie Tucker, Magistrate Judge.

The decision of the magistrate court is affirmed.

Alex W. Brockman, Canyon County Public Defender's Office, Caldwell, for appellant, John Doe.

Teri Whilden, Deputy Idaho Attorney General, Caldwell, for respondent, State of Idaho.

_____

STEGNER, Justice.

This case addresses the interaction between the Idaho Child Protective Act (CPA) and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), an issue of first impression for this Court. It involves a magistrate court's custody determination of an eight-year-old developmentally delayed and hearing-impaired child (Child) who was removed from his father's (Father) care by law enforcement on an emergency basis. Child was found home alone by representatives of the Idaho Department of Health and Welfare (IDHW or the Department). After a shelter care hearing, the magistrate court determined that there was reasonable cause to believe that Child fell within the jurisdiction of the CPA based on a lack of a stable home environment. *See* I.C. §§ 16-1601–1647. Father objected to the magistrate court's exercise of jurisdiction, arguing that because Father had been granted joint custody of Child with Child's mother (Mother) by a California court, the UCCJEA applied, which required the magistrate court to consult with

1

the California court that had previously entered the custody order before the magistrate court could proceed in Idaho. After contacting and communicating with the California judge's representative, the magistrate court conducted an adjudicatory hearing, ultimately vesting custody of Child with the Department. For the reasons set forth, we affirm the decision of the magistrate court.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On November 13, 2020, Caldwell police officers responded to Father's home to assist the Department in performing a welfare check. Father was not home at the time, but Child was home alone and eventually opened the door. Law enforcement and the Department's representatives observed that Child was dressed only in what appeared to be his father's underwear, which were obviously too large for him. The officers also observed a bruise on Child's arm approximately 1.5 inches in diameter. Child told one officer that his father was not home and that he did not know where Father was or when he would return.

The officers continued speaking with Child while attempting to locate Father. Child disclosed to the officers that Father would "punch[ Child] with a closed fist and middle finger knuckle extended." Child also disclosed that Father would "hit him in the body" using an extendable hose from a vacuum, and pinch Child on the bottom when he was in trouble. Officers were informed by IDHW on the scene that Father had withdrawn Child from school some time in September 2020, and that Child had developmental delays as well as a hearing impairment.

Based on Child's appearance and disclosures, coupled with Father's leaving Child alone in the home, the officers declared Child in imminent danger, which resulted in the Department's representatives taking Child into their custody. After about an hour on scene, as the officers were about to leave, Father returned home. An officer asked Father about Child's disclosures of potential abuse. Father responded that the bruise on Child's arm was probably the result of their "wrestling," but that it was not intentional. Father noted that Child is larger than the average eight-year-old and that they "play rough" and Father must "defend himself against [Child]."

On November 16, 2020, the State filed a Petition pursuant to the Child Protective Act, alleging that Child was without proper care by Father. On November 17, and continued on November 24, 2020, the magistrate court conducted a shelter care hearing.[1] The magistrate court

---

[1] The transcript and record also contain references to an earlier child protection action. In May of 2020, Child had been removed from Father's care on an emergency basis under similar circumstances. At the shelter care hearing, which took place on May 8 and 11, 2020, it was determined that Mother, who lives in California, was a safe alternative to Father. The magistrate court dismissed the action against Father and released Child into Mother's custody. Some

2

initially concluded that because Child was found living in Idaho, he was within the jurisdiction of the court. The magistrate court next found that there was "reasonable cause to believe that the child f[ell] within the jurisdiction of the Child Protection Act due to an unstable home environment."

The magistrate court initially scheduled an adjudicatory hearing for December 15, 2020. At this time, the magistrate court noted that a child custody order had previously been entered by a court in San Joaquin County, California. Child's Mother still resided in California and the custody order provided for joint custody between Father and Mother.[2] Father objected to the magistrate court conducting an adjudicatory hearing, arguing that the magistrate court was not in compliance with the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Father's counsel orally moved "the court [to] have the required UCCJEA conversation" with the presiding California judge regarding which court had jurisdiction:

> Your Honor, since . . . California has made an initial custody determination that has exercised jurisdiction and one of the parents resides in California, it's going to be our request that the court have the required UCCJEA conversation and provide us at least notice to when that's going to be, an opportunity to provide some evidence. But I can file a bench brief that outlines what the positions are prior to this court assuming full jurisdiction and adjudicating this child within—or making an adjudicatory determination over the child.

The magistrate court requested that Father file a formal motion with an accompanying brief so the issue could be addressed at the adjudicatory hearing which was scheduled to take place on January 11, 2021.[3]

At the subsequent adjudicatory hearing, Father's counsel again objected to the magistrate exercising jurisdiction over Child: "[Father] is objecting to this hearing happening at all without that conference first proceeding forward and without California authorizing jurisdiction." The magistrate court was unpersuaded by Father's request for additional compliance with the UCCJEA:

> The [c]ourt does find that the Idaho Child Protection Act gives this [c]ourt exclusive and original jurisdiction over children who are found in the State of Idaho. . . . [S]o I'm going to deny the motion on those grounds. It's clear from the

---

time in the following months, Mother, without court involvement, returned Child to Father's care, all of which preceded the current child protection action.

[2] This custody order is absent from the record.

[3] Father's written motion and brief in support are also absent from the record. At the adjudicatory hearing, another attorney filled in for Father's counsel who purportedly filed the motion. That attorney "largely [rested] on the memo that [Father's original counsel] submitted." Thus, the record only contains references to Father's verbal motion for compliance with the provisions of the UCCJEA at the adjudicatory hearing. Issues regarding preservation have not been raised by either party on appeal.

3

Child Protection Statute that this is the case.

> But out of an abundance of caution, I did contact the [c]ourt that entered the custody order in this matter out of San Joaquin County[, California]. And I was able to have e-mail correspondence with the presiding judge's secretary. And the presiding judge also agrees with this [c]ourt that jurisdiction is not an issue because Idaho's jurisdiction over this particular dependency case trumps any type of jurisdiction in the family law case. And so I'll just let the parties know of that. I have a copy of the e-mail if anybody wants to see it.

The communication referred to by the magistrate court consists of an email exchange between the Idaho magistrate court and a "Legal Process Clerk Supervisor" from the family law court in San Joaquin County Superior Court in Stockton, California. The Idaho magistrate court's email to the California clerk read:

> I am the presiding judge over a child protection action here in Idaho over [Child.] . . . [Father's] attorney is asserting a UCCJEA issue of jurisdiction due to the custody order in San Joaquin County. I am conferring/inquiring of the California court (pursuant to UCCJEA) whether the California Court wishes to assume jurisdiction over the dependency case here in Idaho due to the exercise of jurisdiction by California. If the judge has a moment to either email back or call my assistant to set up an informal phone call to discuss the issue, that would be much appreciated.

The San Joaquin County court clerk responded:

> The presiding [family law] judge of our County will be returning next week and will call your Court to discuss. She also mentioned that juvenile court trumps family court so jurisdiction shouldn't be an issue. Please let me know if you have any additional questions or concerns.

In further reply, the Idaho magistrate court stated:

> I agree with the judge's assessment of jurisdiction here in Idaho over the dependency/child protection case. I was reaching out in an abundance of caution and at the request of defense counsel just to say we did. You can let the judge know that this email could count as our conference and I will leave it up to her if she still wishes to call. My position is that Idaho will hold onto any child protection action pending.

The California court did not respond to the Idaho magistrate court's e-mail.

The Idaho magistrate court then denied Father's motion, finding that "the Idaho Child Protection Act gives this court *exclusive original jurisdiction* over the minor child at issue in this matter because he is a child living in or found within the state." (Emphasis in original.)

The magistrate court then heard testimony from the Department's caseworkers, law

4

enforcement officers, and Child's Mother at the adjudicatory hearing.[4] At the close of evidence, the magistrate court made its findings: "[B]ased on the evidence that was presented to the [c]ourt, I do find that [Child] at this time by a preponderance of evidence is subject to an unstable home environment, and, therefore, he is within the jurisdiction of the Child Protection Act." The magistrate court based its decision primarily on Father's inability to meet Child's developmental, physical, and educational needs. The magistrate court next made the disposition finding:

> I am making the finding that it is in the best interest of the child at least at this point in time for custody to vest with the Department of Health and Welfare, and it would be contrary to the welfare of the child to remain in the home. I also find that the department did make reasonable efforts to prevent removal, but those efforts were unsuccessful.

Father moved for a permissive appeal pursuant to Idaho Rule of Appellate Procedure (IAR) 12.1, which was granted by the magistrate court.[5] Father then timely appealed to this Court.

## II.    STANDARD OF REVIEW

"Whether the [magistrate] court had subject matter jurisdiction is a question of law over which this Court exercises free review." *T3 Enterprises, Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 738, 745, 435 P.3d 518, 525 (2019) (quoting *H.F.L.P., LLC v. City of Twin Falls*, 157 Idaho 672, 678, 339 P.3d 557, 563 (2014)).

"The Supreme Court reviews the magistrate court record to determine whether there is substantial, competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 300, 303, 256 P.3d 708, 711 (2011).

## III.    ANALYSIS

### A.  As a threshold determination, we hold that the UCCJEA applies to actions arising under the Idaho Child Protective Act.

At the shelter care hearing, the magistrate court determined that Child was under the jurisdiction of the Idaho Child Protective Act because Child was found in Idaho. At the adjudicatory hearing, the magistrate court similarly concluded that "the Idaho Child Protection Act gives this [magistrate] court exclusive and original jurisdiction over children who are found in the State of Idaho." With regard to the UCCJEA's applicability, the magistrate court stated that "the

---

[4] At the beginning of the adjudicatory hearing, Mother stipulated that Child fell within the jurisdiction of the CPA.
[5] Father's motion for permissive appeal is also absent from the record. The record only contains the magistrate court's order granting Father's motion.

presiding judge [in California] also agrees with this [c]ourt that jurisdiction is not an issue because Idaho's jurisdiction over this particular dependency case trumps any type of jurisdiction in the family law case."

On appeal, Father argues that the magistrate court erred in finding that the provisions of the UCCJEA did not apply to the Child Protection Act. Father argues that a protective action under the CPA is a child custody determination; therefore, the provisions of the UCCJEA apply and the presiding Idaho judge must comply with its provisions before proceeding to an adjudicatory hearing.

In response, the Department argues that the UCCJEA does not apply to dependency cases because the "Idaho Child Protection Act makes it blatantly clear that a court having before it a child protection case shall have exclusive original jurisdiction in all proceedings brought under the chapter." The Department asserts that because Child was found in Idaho, the magistrate court "was correct in finding that [it] had exclusive jurisdiction over the case." The Department contends that the UCCJEA "applies to cases in which the issue of the custody between the parents appears," as opposed to litigating custody of a child in a child protection action. (Emphasis in original.)

The UCCJEA was adopted in Idaho in 2000. *See* S.B. 1298, 55th Leg., 2nd Reg. Sess. (Idaho 2000). Forty-nine states and the District of Columbia have enacted the UCCJEA, including both Idaho and California.[6] The UCCJEA attempted to close gaps created by the previous iteration of the law, the Uniform Child Custody and Jurisdiction Act (UCCJA). The UCCJEA "attempts to foster uniformity among state laws governing jurisdiction over child custody determinations." 53 A.L.R.6th 419 (2010). Broadly speaking, it "provides clearer standards for which States can exercise original jurisdiction over a child custody determination." UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT 3 (National Conference of Commissioners on Uniform State Laws 1997).

Idaho has also enacted the Child Protective Act (CPA), which vests jurisdiction in Idaho courts as follows: "Except as otherwise provided herein, the court shall have exclusive original jurisdiction in all proceedings under this chapter concerning any child living or found within the state: . . . Whose parents or other legal custodian fails to provide a stable home environment." I.C.

---

[6] *See Child Custody Jurisdiction and Enforcement Act Enactment Map* Uniform Law Commission, (https://www.uniformlaws.org/committees/community-home?CommunityKey=4cc1b0be-d6c5-4bc2-b157-16b0baf2c56d); *see also* I.C. §§ 32-11-101–405; Cal. Family Code §§ 3400–3465.The Idaho version of the UCCJEA is substantially like California's version.

§ 16-1603(1)(b). In turn, section 16-1604(2) provides: "The parties have an ongoing duty to inquire concerning, and inform the court as soon as possible about, any other pending actions or current orders involving the child. In the event there are *conflicting orders from Idaho courts* concerning the child, the child protection order is controlling." I.C. § 16-1604(2) (italics added). The Idaho CPA does not contain a provision regarding *interstate* child custody orders.

The UCCJEA provisions are found in Title 32 Chapter 11 of the Idaho Code. *See* I.C. §§ 32-11-101–405. First, the UCCJEA's definitions provision defines a "child custody determination" as

> a judgment, decree, or other order of a court providing for the legal custody, physical custody or visitation with respect to a child. The term includes a permanent, temporary, initial and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.

I.C. § 32-11-102(c). Next, the same provision broadly defines a "child custody proceeding" as

> a proceeding in which legal custody, physical custody or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, *dependency*, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear. The term does not include a proceeding involving juvenile delinquency, contractual emancipation or enforcement under part 3 of this chapter.

I.C. § 32-11-102(d) (italics added).

While Idaho courts have not yet had occasion to grapple with the UCCJEA's applicability to child dependency actions, many jurisdictions have. Twenty-eight states have held that the UCCJEA applies to child protection cases.[7] Especially instructive here is California's application

---

[7] *See M.B. v. B.B.*, 244 So. 3d 128, 131 (Ala. Civ. App. 2017); *E.H. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 23 P.3d 1186, 1191 (Alaska 2001); *Arturo D. v. Dep't of Child Safety*, 464 P.3d 1286, 1289 n.7 (Ariz. Ct. App. 2020), *review denied* (Feb. 16, 2021); *Arkansas Dep't of Hum. Servs. v. Waugh*, 457 S.W.3d 286, 289 (Ark. Ct. App. 2015); *In re Aiden L.*, 224 Cal. Rptr. 3d 400, 406 (Cal. Ct. App. 2017); *People In Int. of A.B-A.*, 451 P.3d 1278, 1282 (Colo. App. 2019); *In re Teagan K.-O.*, 242 A.3d 59, 70 (Conn. 2020); *In re J.R.*, 33 A.3d 397, 400 (D.C. 2011); *N.B. v. Dep't of Child. of Fams.*, 274 So. 3d 1163, 1168 (Fla. Dist. Ct. App. 2019); *Int. of A. L.*, 833 S.E.2d 296, 298 (Ga. Ct. App. 2019); *In re E.D.*, 812 N.W.2d 712, 716 (Iowa Ct. App. 2012); *In re A.A.*, 354 P.3d 1205, 1213 (Kan. Ct. App. 2015); *Campbell v. Campbell*, 2021 WL 137752, at *3 (Ky. Ct. App. Jan. 15, 2021); *In re John F.*, 899 A.2d 976, 981 (Md. Ct. Spec. App. 2006); *Burnham v. Burnham*, No. 310622, 2012 WL 6633973, at *2 (Mich. Ct. App. Dec. 20, 2012); *In re Welfare of Child. of D.M.T.-R.*, 802 N.W.2d 759, 763 (Minn. Ct. App. 2011); *Matter of E.Y.R.*, 446 P.3d 1117, 1120 (Mont. 2019); *In re Int. of Kirsten H.*, 915 N.W.2d 815, 823 (Neb. Ct. App. 2018); *State ex rel. Child., Youth & Fams. Dep't v. Katrina B.*, 2020 WL 6538409, at *2 (N.M. Ct. App. Nov. 5, 2020); *Matter of Saida A.*, 143 N.Y.S.3d 501, 508 (N.Y. Fam. Ct. 2021); *In re H.L.A.D.*, 646 S.E.2d 425, 430 (2007), *aff'd*, 655 S.E.2d 712 (N.C. Ct. App. 2008); *In re Marriage of Jones & White*, 430 P.3d 544, 549 (Okla. Civ. App. 2018); *State v. L.P.L.O.*, 381 P.3d 846, 852 (Or. Ct. App. 2016); *In re M.P.*, 219 A.3d 1315, 1322 (Vt. 2019); *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 746 S.E.2d 509, 524 n.4 (Va. Ct. App. 2013); *In re J.C.*, 832 S.E.2d 91, 96 (W. Va. 2019); *In re Termination of Parental Rts. to Thomas J.R.*, 663 N.W.2d 734, 740 (Wis. 2003); *In re NC*, 294 P.3d 866, 873 (Wyo. 2013).

of the UCCJEA to child dependency proceedings. *See In re C.T.*, 121 Cal. Rptr. 2d 897, 903 (Cal. Ct. App. 2002) ("The [UCCJEA] is the exclusive method of determining the proper forum in custody disputes involving other jurisdictions and governs juvenile dependency proceedings.").

Principles of statutory interpretation also support the conclusion that the UCCJEA applies to child protection cases. In the event of two conflicting statutory schemes governing the same subject matter, we apply the more specific law. *See* Stephen Adams, *Listing the Canons of Construction*, 59 ADVOCATE 48, 49 (2016); *Tomich v. City of Pocatello*, 127 Idaho 394, 400, 901 P.2d 501, 507 (1995). Here, because the CPA does not contemplate existing out of state custody orders, the UCCJEA is the more specific statutory scheme.[8]

Based on the UCCJEA's expansive definition of "child custody proceedings," and its explicit contemplation of *interstate* child custody proceedings, we now join over half of our sister states in holding that the provisions of the UCCJEA apply to child protection actions, including actions arising under the Idaho Child Protective Act. Here, Child was taken into temporary custody by the Department after he was declared in imminent danger by law enforcement. This action alone placed the "physical custody" of Child at issue. *See* I.C. § 32-11-102(c). When the magistrate court learned that an order providing for the custody of Child existed in California, the UCCJEA was implicated. Having held that the UCCJEA applies to dependency proceedings, the next question we must answer is whether the magistrate court properly complied with its provisions before

---

Additionally, eight more states have applied the UCCJEA to dependency proceedings, or explicitly held that it applies to termination of parental rights proceedings. *Dep't of Servs. for Child., Youth, & Their Fams., Div. of Fam. Servs. v. D-K-M*, 2013 WL 6971183, at *1 (Del. Fam. Ct. Nov. 8, 2013) (applying UCCJEA provisions in a dependency action); *In re J.S.*, 131 N.E.3d 1263, 1268 (Ill. App. Ct. 2019) (discussing UCCJEA generally); *State ex rel. A.U.M.*, 62 So. 3d 185, 188 (La. Ct. App. 2011) (applying UCCJEA in a dependency case); *In Int. of Arnold*, 532 S.W.3d 712, 716 (Mo. Ct. App. 2017) (applying UCCJEA provisions in a termination of parental rights case); *In re R.M.*, 997 N.E.2d 169, 190 (Ohio Ct. App. 2013) (applying UCCJEA in a termination of parental rights case); *B.T.W. ex rel. T.L. v. P.J.L.*, 956 A.2d 1014, 1016 (Pa. Super. Ct. 2008) (citing UCCJEA provisions with approval where child was subjected to abuse); *S.C. Dep't of Soc. Servs. v. Tran*, 792 S.E.2d 254, 258 (S.C. Ct. App. 2016) (holding that the UCCJEA applies to termination of parental rights proceedings); *In re Apex R.*, 577 S.W.3d 181, 198 (Tenn. Ct. App. 2018) (applying the UCCJEA in a termination of parental rights action and citing with approval the UCCJEA's provision on applicability to dependency actions).

In contrast, only one state, Maine, has concluded that the UCCJEA does *not* apply to child protection cases. *In re Higera N.*, 2 A.3d 265, 273 (Me. 2010). The remaining states that have enacted the UCCJEA have not yet ruled on its applicability to child protection proceedings (this includes Hawaii, Idaho, Indiana, Mississippi, Nevada, New Jersey, North Dakota, Rhode Island, Texas, Utah, and Washington). Finally, Massachusetts is the only state that has not yet enacted the UCCJEA.

[8] The CPA was significantly revised in 2001, just one year after the UCCJEA was adopted. *See* H.B. 185, 56th Leg., 1st Reg. Sess. (Idaho 2001). The 2001 CPA revisions included the addition of the "conflicting orders from Idaho courts" language to I.C. 16-1604(2). Principles of statutory interpretation direct us to presume the legislature was aware of the "dependency" language in the UCCJEA when they only added language concerning Idaho orders to 16-1604(2).

adjudicating Child to the custody of the Department.

**B. The magistrate court complied with the UCCJEA's temporary emergency jurisdiction provision.**

After the initial shelter care hearing, the Idaho magistrate court vested custody of Child with the Department "until the [a]djudicatory hearing," which was set for just over one month after the shelter care hearing. The Idaho magistrate court, upon learning of the existing California custody order, attempted to contact the California court "out of an abundance of caution." E-mail correspondence between the court's representative in California and the Idaho magistrate court occurred, which gave the Idaho magistrate court guidance that California had agreed to defer to the Idaho court's jurisdiction over Child's case.

On appeal, Father argues that because California had already issued a custody determination, the Idaho magistrate court should have proceeded under the UCCJEA's temporary emergency jurisdiction provision. In order to comply with that provision, Father argues, the Idaho magistrate court should have communicated with the California court itself, not the court clerk via e-mail. Further, Father contends that he should have been permitted to provide evidence and present argument to the California court regarding its exercise of jurisdiction.

In response, the Department argues that the communication between the Idaho magistrate court and the California court satisfied the statutory requirements set forth in Idaho Code section 32-11-110 because that statute does not require the court to include the parties in the communication. The Department further argues that Father had an opportunity to present evidence and argument through his briefing on the UCCJEA issue because it was filed before the Idaho magistrate court ruled on the jurisdiction issue.

Section 32-11-201 of the UCCJEA outlines when an Idaho court has "initial" jurisdiction over a child custody proceeding:

> (a) Except as otherwise provided in section 32-11-204, Idaho Code, a court of this state has jurisdiction to make an initial child custody determination only if:
>
>> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state; [or]
>>
>> (2) A court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate

9

forum under section 32-11-207 or 32-11-208, Idaho Code, and:

> (A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
>
> (B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships[.]

I.C. § 32-11-201(a). Section 32-11-202 confers "exclusive, continuing jurisdiction" with the court that made the initial child custody determination. I.C. § 32-11-202(a). Here, California had initial and exclusive jurisdiction at the time the proceedings began in Idaho because of the preexisting custody order.[9]

When a court does not have initial jurisdiction to modify an out of state custody order, "temporary emergency jurisdiction" can exist under certain circumstances:

> (a) A court of this state has temporary emergency jurisdiction if the child is *present in this state* and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.
>
> . . .
>
> (c) If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under sections 32-11-201 through 32-11-203, Idaho Code, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under sections 32-11-201 through 32-11-203, Idaho Code. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.
>
> (d) A court of this state which has been asked to make a child custody determination under this section, upon being informed that a . . . child custody determination has

_____

[9] However, Idaho Code section 32-11-203 prevents an Idaho Court from modifying an existing out of state custody order, with exceptions:

> Except as otherwise provided in section 32-11-204, Idaho Code, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under section 32-11-201(a)(1) or (2), Idaho Code, and:

> (a) The court of the other state determines it no longer has exclusive, continuing jurisdiction[9] under section 32-11-202, Idaho Code, or that a court of this state would be a more convenient forum under section 32-11-207, Idaho Code; or

> (b) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

I.C. § 32-11-203. Thus, an Idaho court can modify an existing out of state custody order once the other state determines that it no longer has jurisdiction. *See id.* Father acknowledges that "if California declines jurisdiction, it is not disputed that Idaho could make an initial custody determination under either home-state or significant connections analys[es]."

10

been made by[] a court of a state having jurisdiction under Sections 32-11-201 through 32-11-203, Idaho Code, *shall immediately communicate with the other court*. A court of this state which is exercising jurisdiction pursuant to sections 32-11-201 through 32-11-203, Idaho Code, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

I.C. § 32-11-204(a), (c), (d) (italics added).

The UCCJEA allows for a state to take temporary emergency jurisdiction over a child if "the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse." I.C. § 32-11-204(a). Once an Idaho court learns of an existing custody determination made by another state, the UCCJEA then requires that the Idaho court "immediately communicate with the court of [the other] state to resolve the emergency, protect the safety of the parties and the child, and determine a period of duration of the temporary order." I.C. § 32-11-204(d). These provisions only allow an Idaho court to exercise jurisdiction over a child in limited circumstances and for a limited time, or until the other state court relinquishes its jurisdiction over the matter. *See In re C.T.*, 121 Cal.Rptr.2d at 903 ("Under [the UCCJEA as codified in California,] a California court may enter a child custody order for a child subject to an existing sister state custody order only if it finds an emergency necessitating protection of the child from mistreatment or abuse and the order is limited in time to a specified period.").

Here, the question is whether the Idaho magistrate court complied with Idaho Code section 32-11-204. *See In re Cristian I.*, 169 Cal.Rptr.3d 265, 275 (Cal. Ct. App. 2014) ("The juvenile court proceedings here, although flawed, substantially complied with the essential procedural requirements of the UCCJEA and fully satisfied the central goals of the act."). The first requirement of section 32-11-204(a) is that the child be "present in this State." It is not disputed that when the Department took custody of Child that he was present in the State of Idaho. Next, we must determine whether Child was "abandoned" or "subjected to or threatened with mistreatment or abuse." I.C. § 32-11-204(a); *see also In re NC*, 294 P.3d at 875.

The UCCJEA defines "abandonment" as a child who is "left without provisions for reasonable and necessary care or supervision." I.C. § 32-11-102(a). Further, "[a]n 'emergency' exists when there is an immediate risk of danger to the child if he or she is returned to the parent."

11

*In re Christian I.*, 169 Cal.Rptr.3d at 273. When law enforcement and the Department's workers arrived at Father's residence, Child had been left alone at home for an unknown period of time. Child was in a state of disarray (clothed only in Father's underwear), and Child is developmentally delayed and has a significant hearing impairment. His arm was bruised, and he informed police officers that his father sometimes punched him with his middle knuckle extended and hit him with a vacuum hose. Father had also inexplicably withdrawn Child from school approximately three weeks prior to the time he was taken into the Department's custody and as a result Child no longer received speech therapy, occupational therapy, and behavioral therapy provided at the school. Child was without necessary supervision and care and was also threatened with mistreatment by his father. Therefore, the Idaho magistrate court correctly assumed temporary emergency jurisdiction pursuant to Idaho Code section 32-11-204(a).

Next, section 32-11-204(d) mandates that the court "*shall* immediately communicate with the other court" "upon being informed that a . . . child custody determination has been made by[] a court of a state having [initial] jurisdiction." I.C. § 32-11-204(d) (italics added). The purpose of this communication is to "resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." *Id.*

In turn, Idaho Code section 32-11-110 governs communication among courts under the UCCJEA:

> (a) A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter.
>
> (b) The court *may* allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.
>
> . . .
>
> (d) Except as otherwise provided in subsection (c) of this section, a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record. . . .

I.C. § 32-11-110 (italics added).

Thus, our next inquiry is whether the Idaho magistrate court communicated with the California family law court within the meaning of the statute. We have not had occasion to interpret the provision requiring an Idaho court to contact a sister state's court with existing jurisdiction. Consequently, we look to other jurisdictions for their experience. California's stated rationale for

12

communication between courts is to determine "whether the sister state court wishes to continue its jurisdiction and how much time it requires to take appropriate steps to consider further child custody orders." *In re Christian I.*, 169 Cal.Rptr.3d at 273.

California has also determined that no response or refusal to discuss the case from a foreign jurisdiction is equivalent to relinquishing jurisdiction. *See In re A.C.*, 220 Cal. Rptr. 3d 725, 738 (Cal. Ct. App. 2017) ("[T]he Mexico judicial authorities' failure to respond to its e-mails was tantamount to their declination to exercise jurisdiction over the children's cases."); *In re M.M.*, 192 Cal. Rptr. 3d 849, 861 (Cal. Ct. App. 2015) ("[W]e conclude that when a home state declines jurisdiction in any manner that conveys its intent *not* to exercise jurisdiction over a child in connection with a child custody proceeding, including inaction *or*, as in the instant case, by refusing to even discuss the issue of jurisdiction despite myriad good faith attempts to do so by the juvenile court, that such inaction or refusal is tantamount to a declination of jurisdiction by the home state.") (Italics in original.)

The Idaho magistrate court complied by contacting the California court to inquire about jurisdiction. The Idaho magistrate court's emails demonstrate a willingness to engage in an "informal phone call" to discuss jurisdiction with the California family court. Even though the communication was with the court clerk, the Idaho magistrate court's final email to the California court expressly indicated that Idaho would be exercising jurisdiction over the matter and left open the line of communication: "I will leave it up to [the presiding judge] if she still wishes to call." The California court did not follow up on the Idaho court's assertion of jurisdiction, impliedly indicating that it was declining to exercise jurisdiction over the matter. Although not as formal as it might have been, this informal communication complied with Idaho Code section 32-11-204(d).

While we have determined there was no legal error in the Idaho magistrate court's handling of this matter, this decision should serve as guidance to judges in Idaho who encounter UCCJEA issues. In order to avoid confusion, Idaho courts, when learning of an already existing sister state custody determination, should engage in a shelter care hearing to determine whether an emergency exists regarding a child. If the court determines that there is an emergency requiring the child to be placed in the Department's custody, the magistrate court should then issue a *temporary* order of protective custody, informing the parties (including both parents) and the sister state court of the proceedings. *See* I.C. § 32-11-204(c)–(d). At least one California court has indicated that a judicial order or decree from the sister state formally relinquishing jurisdiction creates more

certainty for the parties and both courts as to jurisdiction. *See e.g.*, *In re Marriage of Nurie*, 98 Cal.Rptr.3d 200, 220 (Cal. Ct. App. 2009). We endorse obtaining a decree from a sister state which relinquishes jurisdiction as a best practice. Such certainty is more faithful to the goals of the UCCJEA, which is to encourage cooperation among sister state courts in order to avoid concurrent jurisdiction or conflicting orders. *See* UCCJEA, §101, cmt. 1, 2. We also recognize, however, that other forms of communication can satisfy the UCCJEA communication requirement. The determination of whether communication between courts met the requirements of the UCCJEA will necessarily depend on the facts of each case.

Because we conclude that California relinquished its jurisdiction over Child's case, the Idaho magistrate court properly exercised jurisdiction in adjudicating Child into the Department's custody. *See In re Aiden L.*, 224 Cal. Rptr.3d 400, 408 (Cal. Ct. App. 2017) ("If a California court has exercised temporary emergency jurisdiction pursuant to section 3424, subdivision (a), to protect a child present in the state from actual or threatened abuse or mistreatment, that court may not address the merits of the dependency petition or otherwise make a final child custody determination *until it properly asserts jurisdiction under the nonemergency jurisdiction provisions of the UCCJEA*.") (italics added).

Finally, with respect to Father's argument that he should have been allowed to present evidence and argument to the California court, no such right exists. *See* I.C. § 32-11-110(b), (d). Rather, Father's right to present evidence and argument was with the magistrate court. Upon hearing Father's motion for compliance with the UCCJEA, the magistrate court informed the parties of the e-mail exchange with the California court. The Idaho court offered the parties the opportunity to review the e-mails exchanged: "I have a copy of the e-mail if anybody wants to see it." None of the parties, including Father, requested to see the e-mails at that time and there is no indication in the record that Father was not able to access them in time to object or respond. Thus, there was no due process violation.

### C. The magistrate court's decision placing Child in the protective custody of the Department was based on substantial and competent evidence.

At the conclusion of the adjudicatory hearing, the magistrate court found "by a preponderance of evidence" that Child was subjected to an unstable home environment and within the jurisdiction of the CPA. "I am making the finding that it is in the best interest of the child at least at this point in time for custody to vest with the Department of Health and Welfare, and it would be contrary to the welfare of the child to remain in the home." In the magistrate court's

written findings of fact, it referred to and incorporated by reference an "Adjudicatory/Disposition Report of Investigation" to support its decree placing Child in the Department's custody. This report, however, is not contained in the record before us. Because Father brought this appeal and was responsible for presenting the record in this appeal, we assume information not provided supports the magistrate court's findings of fact and conclusions of law. *In re Prefiling Ord. Declaring Vexatious Litigant*, 164 Idaho 771, 776, 435 P.3d 1091, 1096 (2019) ("'The party appealing a decision of the [magistrate] court bears  the burden of ensuring that this Court is provided a sufficient record for review of the [magistrate] court's decision.' Consequently, '[w]hen a party appealing an issue presents an incomplete record, this Court will presume that the absent portion supports the findings of the [magistrate] court.'") (Citations omitted.)

On appeal, Father argues that the magistrate court's decision was not supported by the evidence because Father was in the process of re-enrolling Child in school and addressing his medical and developmental needs. In response, the Department contends that the magistrate court's determination was supported by substantial and competent evidence based on Father's inability to meet and understand Child's special educational and developmental needs.

> At a CPA adjudicatory hearing, if the court finds that the child comes within the court's jurisdiction, the court has the discretion to either place the child under protective supervision in his own home or vest legal custody of the child in the Department or other authorized agency. I.C. §§ 16–1619(4) to (5). In making this decision, "the court shall consider any information relevant to the disposition of the child." I.C. § 16–1619(5).

*Doe*, 151 Idaho at 308, 256 P.3d at 716. Magistrate courts are afforded broad discretion in child custody determinations:

> [T]his Court does not reweigh evidence, but "defer[s] to the trial court's unique ability to 'accurately weigh the evidence and judge the demeanor of the witnesses' and take into account the trial court's 'superior view of the entire situation.'" [*State v. Doe,* 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007)] (quoting *Doe v. Roe,* 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999)).

*In re Doe*, 156 Idaho 103, 108, 320 P.3d 1262, 1267 (2014). "Findings are competent, so long as they are supported by substantial, albeit possibly, conflicting, evidence" *Roe v. Doe*, 142 Idaho 174, 177, 125 P.3d 530, 533 (2005) (quoting *Roberts v. Roberts*, 138 Idaho 401, 405, 64 P.3d 327, 331 (2003)).

Here, the magistrate court concluded that it would be contrary to Child's welfare to remain in Father's home. This conclusion was based on substantial and competent evidence. First, because

15

the investigative report is not included in the appellate record, we presume that it supports the magistrate's decision to vest custody of Child with the Department. *See In re Prefiling Ord. Declaring Vexatious Litigant*, 164 Idaho at 776, 435 P.3d at 1096. Even so, the factual findings made by the magistrate court at the conclusion of the adjudicatory hearing support its decision to remove Child from Father's care. The magistrate court pointed to the previous child protection case involving the same parties under very similar factual circumstances. The earlier resolution also failed in that Child found himself right back in the environment he had previously been removed from. Father's decision to remove Child from school for a number of weeks before the action commenced, as well as Father's "lack of understanding about [Child's] needs, his medical care, and essentials for [Child's] well-being[,]" demonstrate support for the magistrate court's determination.

The magistrate court was in the unique position of weighing the witnesses' testimony and credibility firsthand. We will not disturb that judgment on appeal, especially considering we have an incomplete record. Therefore, the magistrate court's decision to place Child in the custody of the Department is affirmed.

## IV.  CONCLUSION

For the reasons discussed above, we affirm the decision of the magistrate court.

Chief Justice BEVAN, Justices BRODY, MOELLER, and ZAHN CONCUR.

16